**In re Donald Clifford HABERMAN and Diana Dorothy Haberman, Debtors.**

**BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, STATE OF WISCONSIN, Plaintiff,**

v.

**Donald Clifford HABERMAN, Defendant.**

**Bankruptcy No. 91–00679–JES. Adv. No. 91–0157.**

United States Bankruptcy Court, E.D. Wisconsin.

Feb. 5, 1992.

---

Mark J. Brunner, Bass & Moglowsky, S.C., Milwaukee, Wis., for plaintiff.

Robert M. Waud, Milwaukee, Wis., for defendant-debtor.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

In 1985, Donald C. Haberman's license to practice law was suspended by the Wisconsin Supreme Court for two years commencing January 1, 1986. Mr. Haberman was also ordered to pay to the Board of Attorneys Professional Responsibility, State of Wisconsin ("BAPR"), the costs of the disciplinary proceedings. The court further provided that, until such time as the costs were paid, his license would remain suspended until further order of the court. *Disciplinary Proceedings Against Haberman,* 126 Wis.2d 411, 430, 431, 376 N.W.2d 852 (1985). On December 16, 1985, a judgment for the costs was entered by the Wisconsin Supreme Court in favor of BAPR and against Mr. Haberman for $10,-125.58, which remains unpaid. Mr. Haberman's license remains suspended. On February 1, 1991, Mr. Haberman filed a chap-

ter 7 petition in bankruptcy and listed the unpaid costs among his debts.

This adversary proceeding was commenced by BAPR seeking a declaration that the costs constitute a nondischargeable debt under 11 U.S.C. § 523(a)(7).[1] The matter has been presented upon a stipulation of facts.

The following two issues are involved in this dispute:

1. Is BAPR a "governmental unit" within the meaning of § 523(a)(7) of the Bankruptcy Code?

2. Are the costs imposed in the nature of a "fine, penalty, or forfeiture"?

For reasons more fully set forth hereafter, the court answers both of these questions in the affirmative.

## IS BAPR A "GOVERNMENTAL UNIT" WITHIN THE MEANING OF § 523(a)(7)?

■■■■ A "governmental unit" is defined in § 101(27) of the Bankruptcy Code as: United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government. 11 U.S.C. § 101(27) (1991).

The legislative history to this provision states that the definition of a "governmental unit" was intended to be construed in the "broadest sense." H.R.Rep. No. 595, 95th Cong., 1st Sess. 311 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6268.

BAPR was created in 1976 by the Wisconsin Supreme Court. Its duties, with respect to enforcement of attorneys professional responsibility, and the procedures for implementing these duties are set forth in the Wisconsin Supreme Court Rules ("SCR") Chapters 21 and 22. The parties have stipulated that BAPR is an arm of the Wisconsin Supreme Court and is primarily responsible for investigating complaints against members of the Bar and making recommendations to the Wisconsin Supreme Court regarding appropriate disciplinary actions. The preamble to SCR 21 recites, in part, that BAPR's role is "to supervise the practice of law and protect the public from professional misconduct by members of the Bar." SCR 21 Preamble.

It is fundamental that the Wisconsin Supreme Court, as the highest state tribunal of the Wisconsin judicial branch, is itself a governmental unit. BAPR, created as an arm of the Wisconsin Supreme Court, is an agency or instrumentality of a governmental unit within the clear contemplation of § 101(27) of the Bankruptcy Code.

The Bankruptcy Appellate Panel in *In re Wade*, 115 B.R. 222, 228 (Bankr.9th Cir. 1990), addressed this issue and decided that the Arizona State Bar, while carrying out its duties in attorney disciplinary proceedings, was a "governmental unit." The Bankruptcy Appellate Panel examined the underlying function exercised by the Bar and concluded that the Bar was acting in a governmental capacity. The Bankruptcy Appellate Panel also emphasized the close relationship between the Arizona Supreme Court and the Bar. *Wade* was recently affirmed by the Ninth Circuit Court of Appeals which held that, although the Bar may not be considered a governmental unit for all purposes, it is so considered when enforcing its regulatory powers with respect to attorney disciplinary proceedings. *In re Wade*, 948 F.2d 1122, 1123 (9th Cir. 1991).

The principles enunciated in *Wade* apply here. In Wisconsin, BAPR carries out the role performed by the Arizona State Bank in *Wade*. BAPR's purpose is to protect the public interest and maintain the integrity and standing of the Bar. If the Arizona State Bar, a body closely related to the

---

**1.** § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty....

Arizona Supreme Court, is a "governmental unit" when it functions in the area of attorney disciplinary proceedings, then surely BAPR, an agency or instrumentality of the Wisconsin Supreme Court, is also a "governmental unit" when it functions to perform the same type of duties.

Mr. Haberman's reliance upon *Levine v. Supreme Court of Wisconsin*, 679 F.Supp. 1478 (W.D.Wis.1988), is misplaced. Although *Levine* held that the State Bar of Wisconsin was not acting as a governmental unit, the circumstances in that case are readily distinguishable from the case at bar. *Levine* involved an Eleventh Amendment immunity issue, not an attorney disciplinary proceeding. Further, Judge Crabb carefully and specifically limited the holding in *Levine* to the context of the defendant's Eleventh Amendment argument. 679 F.Supp. at 1488 n. 3.

Even if the *Levine* holding were not so limited, a determination that the State Bar of Wisconsin is not a governmental unit would not affect the applicability of *Wade* to the present case. The State Bar of Wisconsin does not function in the same capacity as the Arizona State Bar; it is BAPR, not the State Bar of Wisconsin, that enforces attorney disciplinary proceedings. The analogous functions of BAPR and the Arizona State Bar serve to make the reasoning in *Wade* applicable to the case at bar. Nothing in *Levine* operates to preclude this application.

Applying the governmental function approach adopted in *Wade* and recognizing the pervasive nature of the definition of "governmental unit," there can be no doubt that BAPR is a "governmental unit."

### ARE THE COSTS ASSESSED IN THE NATURE OF A "FINE, PENALTY, OR FORFEITURE"?

The following types of authorized discipline are contained in SCR 21.06:

Misconduct is grounds for one or more of the following types of discipline:

(1) Revocation of license to practice law (disbarment).

(2) Suspension of license to practice law, including the imposition of conditions upon seeking reinstatement of the license.

(3) Monetary payment.

(4) Public or private reprimand.

(5) Conditions upon the continued practice of law.

SCR 21.06.

 Payment of costs clearly falls within the second type of discipline as one form of condition for seeking reinstatement of the license to practice law. It may also fall within the third type of discipline as a "monetary payment." The words "misconduct" and "types of discipline" as used in SCR 21.06 indicate that the purpose of the rule is more akin to punishment than to compensation for actual pecuniary loss. According to *Black's Law Dictionary*, "misconduct" means:

A transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior, willful in character, improper or wrong behavior.... Term "misconduct" when applied to act of attorney implies dishonest act or attempt to persuade court or jury by use of deceptive or reprehensible methods.

*Black's Law Dictionary* 999 (6th ed. 1990).

"Discipline" is defined in *Black's Law Dictionary* as:

Correction, chastisement, punishment, penalty. To bring order upon or bring under control.

*Id.* at 464.

Both definitions are penal in nature. Even though assessed costs may result in reimbursement to BAPR, compensation is not the primary objective of the rule. Rather, the rule is primarily intended to deter attorneys from engaging in improper conduct and to convey the message to attorneys and to the public alike that the practice of law is closely scrutinized in order to maintain the Bar's integrity and high standards of professional conduct. Reimbursed costs to BAPR do not represent any "actual" pecuniary loss. BAPR is not dependent upon such reimbursement. Its funding is provided from state appropria-

tions under Wis.Stat. § 20.680(3)(h). *See also* SCR 21.12.

Wisconsin case law as developed reflects a policy of treating assessed costs as penal in nature. In *Disciplinary Proceedings Against Kelly,* 109 Wis.2d 348, 361, 325 N.W.2d 729 (1982), the court refused to apportion costs where only some, but not all, of the counts brought against an attorney were proven. In *Disciplinary Proceedings Against Wheeler,* 108 Wis.2d 573, 577–78, 322 N.W.2d 885 (1982), the court declined to award costs to a respondent attorney where allegations of unprofessional conduct were not proven. In *Disciplinary Proceedings Against Hur,* 126 Wis.2d 119, 122, 375 N.W.2d 211 (1985), the court rejected the disciplined attorney's request that he be excused from paying the costs because he was "bankrupt" with tax liens and his home was in the process of being foreclosed.

The Sixth and Seventh Circuit Courts of Appeals both have ruled that costs imposed as part of a sentence for a criminal offense constitute a nondischargeable debt under § 523(a)(7). *In re Hollis,* 810 F.2d 106, 108 (6th Cir.1987); *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir.1985). The court in *Zarzynski* declared that costs are "an expenditure by the government, part of the expense of governing, but the county did not undertake the expense expecting to create a debtor/creditor relationship" and "there is no county pecuniary loss when the county functions as it should in the furtherance of its public responsibilities." *In re Zarzynski,* 771 F.2d at 306. The court further declared that "the costs can be viewed a part of the penalty even though it is a penalty measured by the extent of certain county expenditures for the trial." *Id.* The court in *Hollis* reached a similar conclusion. It not only relied upon *Zarzynski* but also upon the United States Supreme Court opinion in *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), which held that a debtor's obligation to make restitution payments as part of a criminal sentence is nondischargeable under § 523(a)(7). *In re Hollis,* 810 F.2d at 108.

■ This court recognizes that *Zarzynski, Hollis* and *Kelly v. Robinson* all arose in the context of criminal proceedings. However, to extend their underlying rationale to attorney disciplinary proceedings is not a very large step and is sensible. The ultimate goal of both criminal proceedings and attorney disciplinary proceedings is to protect the public. Sanctions imposed against an offender, whether as part of attorney disciplinary proceedings or criminal proceedings, promote the state's penal and rehabilitative interests. Justice Powell in *Kelly v. Robinson* stated that to discharge an obligation to make restitution payments would "hamper the flexibility of state criminal judges in choosing a combination of imprisonment, fines and restitution most likely to further the rehabilitative and deterrent goals of state criminal court justice systems." *Kelly v. Robinson,* 479 U.S. at 48, 107 S.Ct. at 360. By the same token, if costs arising out of attorney disciplinary proceedings are declared dischargeable, it would impede BAPR's ability to carry out its designated function. This court's power to interfere with attorney disciplinary proceedings must be exercised with judicial restraint and in full recognition of the purpose for which BAPR was created.

■ The costs imposed against Mr. Haberman are nondischargeable under § 523(a)(7) in the sum of $10,125.58 together with interest on the Wisconsin Supreme Court judgment from December 16, 1985 at the rate of 12% per annum (pursuant to Wis.Stat. § 815.05[8]) and costs consisting of the $120 adversary filing fee.

This decision shall constitute this court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### ORDER

The court having rendered its decision this date,

IT IS ORDERED that, pursuant to § 523(a)(7) of the Bankruptcy Code, the obligation of the defendant-debtor, Donald C. Haberman, to the plaintiff, Board of

Professional Responsibility, State of Wisconsin, which was reduced to judgment by the Wisconsin Supreme Court on December 16, 1985 in the sum of $10,125.58 be declared nondischargeable, together with interest from December 16, 1985 at the rate of 12% per annum (pursuant to Wis.Stats. § 815.05[8]) and costs consisting of the $120 adversary filing fee.